IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

CHRISTOPHER G.,[1]

    Plaintiff,

vs.

FRANK BISIGNANO,
Commissioner of Social Security,

    Defendant.

No. 25-CV-1001-CJW-KEM

**REPORT AND RECOMMENDATION**

_____

Plaintiff Christopher G. seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff argues that by limiting his residual functional capacity (RFC) to "simple routine tasks," the administrative law judge (ALJ) did not account for the persuasive medical opinions' limitation to three- to four-step tasks. Plaintiff also argues the ALJ erred in finding work as a marker exists in the national economy when the *Dictionary of Occupational Titles* (*DOT*) description suggests such a job is obsolete. I recommend **reversing** the ALJ's decision and remanding for further proceedings.

## I.    BACKGROUND

Plaintiff filed for Social Security DI benefits in April 2022, alleging a disability onset date of June 30, 2021. AR 60.[2] He alleged disability due to migraines, spinal cord

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] AR refers to the administrative record filed in this case (Doc. 8).

surgeries in November 2021, Reynaud's disease, cognitive issues, and anxiety. *Id*. The Social Security Administration denied his application on initial review in January 2023 and reconsideration in March 2023. AR 70-87. As part of those reviews, state agency psychological consultants Erin Pederson, PhD, and Tiffany Iskander, PhD, reviewed Plaintiff's treatment records and issued opinions on his mental limitations, concluding that he "would be able to complete 3- to 4-step tasks on a sustained basis." AR 65-67, 76-77.

Plaintiff requested further review. The ALJ held a hearing in October 2023, at which Plaintiff and a vocational expert testified. AR 36-37. The ALJ issued a written opinion on January 18, 2024, following the five-step process outlined in the regulations[3] to determine whether Plaintiff was disabled during the relevant time period. AR 14-30. The ALJ found Plaintiff suffered from the severe impairments of migraines, major depressive disorder, and anxiety disorder. AR 17. To aid in steps four and five, the ALJ determined Plaintiff's residual functional capacity (RFC),[4] finding Plaintiff could perform medium work with "moderate noise" and "simple routine tasks." AR 19. The ALJ found Dr. Pederson's and Dr. Iskander's opinions persuasive, "well supported with explanation," and "consistent with the longitudinal record. AR 26-27. The ALJ found Plaintiff could not return to his past work. AR 28. But the ALJ found other jobs existed in significant numbers in the national economy that Plaintiff could perform, including "representative occupations such as" marker, office helper, and patient transporter. AR

---

[3] "During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security . . . listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work." *Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)); *see also* **§ 404.1520(a)(4)**. The claimant bears the burden of persuasion to prove disability. *Goff*, 421 F.3d at 790.

[4] RFC means "the most that a claimant can do despite her limitations." ***Sloan v. Saul***, 933 F.3d 946, 949 (8th Cir. 2019).

29. The ALJ relied on VE testimony that 136,785 marker positions, 6,841 office helper positions, and 7,211 transporter positions exist nationally. AR 29, 56. The ALJ found Plaintiff not disabled from June 30, 2021, through January 18, 2024, the date of the decision. AR 29-30.

The Appeals Council denied Plaintiff's request for review on November 14, 2024 (AR 1-3), making the ALJ's decision that Plaintiff was not disabled the final decision of the Commissioner.[5] Plaintiff filed a timely complaint in this court (Doc. 1).[6] The parties briefed the issues (Docs. 10, 12, 13) and the Honorable C.J. Williams, Chief District Judge for the Northern District of Iowa, referred this case to me for a report and recommendation.

## II. DISCUSSION

So long as substantial evidence in the record as a whole supports the ALJ's decision, a reviewing court must affirm.[7] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."[8] The court "do[es] not reweigh the evidence or review the factual record de novo."[9] If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision."[10]

Plaintiff argues that the ALJ erred in failing to limit his RFC to work involving only three- to four-step tasks, as supported by Drs. Pederson's and Iskander's persuasive

---

[5] *See* **20 C.F.R. § 404.981**.

[6] *See* **20 C.F.R. § 422.210(c)**.

[7] *Grindley*, 9 F.4th at 627; *accord* **42 U.S.C. § 405(g)**.

[8] *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

[9] *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

[10] *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

3

opinions. Plaintiff also argues the *DOT* description of the marker job shows it is obsolete.

### A. *Limitation to Three- to Four-Step Tasks*

Plaintiff argues that the ALJ erred by finding the state agency psychological consultants' opinions persuasive but failing to include in the RFC their limitation to work involving only three- to four-step tasks (and failing to explain this discrepancy). Under the regulations, the ALJ must "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions and . . . prior administrative medical findings."[11] The ALJ must consider certain factors and "explain how [the ALJ] considered the supportability" factor ("the objective medical evidence and supporting explanations" underlying the opinion) and the consistency factor (the consistency of the opinion "with evidence from other medical sources and nonmedical sources").[12] I have previously recognized that "[t]he purpose of this regulation would be undermined if the ALJ could state a medical opinion was persuasive, well-supported, and consistent with the record, without adopting the limitations contained in that opinion or otherwise addressing them."[13]

As part of the state agency reviews, Drs. Pederson and Iskander reviewed treatment records and opined that Plaintiff suffered moderate limitations in the following areas:

- understanding, remembering, and carrying out detailed instructions;
- maintaining attention and concentration for extended periods; and
- completing a normal workday and workweek without interruptions from

---

[11] **20 C.F.R. § 404.1520c(b)**.

[12] **20 C.F.R. § 404.1520c(b)(2), (c)(1)-(2)**.

[13] ***Dowden v. Saul***, No. 19-CV-2054, 2020 WL 6470180, at *7 (N.D. Iowa Nov. 3, 2020); *see also* **Gann v. Berryhill**, 864 F.3d 947, 952-53 (8th Cir. 2017) (holding that the ALJ erred by failing to include in the RFC "adaptive limitations described by [medical] sources to whom the ALJ gave 'significant weight'" under the old regulations for evaluating medical opinions).

4

> psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods.

AR 66, 76. Dr. Pederson explained treatment notes reflected episodes of confusion and issues with memory, such as forgetting to pay bills or the reason for walking into a room, as well as using fifteen different reminders on his phone for simple daily tasks. AR 66-67, 76-77. Dr. Pederson also noted gaps in treatment records reflecting cognitive complaints. *Id.* Overall, Dr. Pederson concluded:

> "[E]vidence is consistent that claimant remains generally able to complete basic daily tasks and various multi-step tasks (e.g., driving, shopping, managing finances, caring for [9-year-old] son). He would at times have difficulties with maintaining concentration/pace or remembering complex tasks. . . . Regarding mental, the preponderance of evidence supports that claimant would be able to complete 3- to 4-step tasks on a sustained basis."

AR 67. Dr. Iskander concurred with this assessment. AR 77.

The ALJ "[wa]s persuaded by" Dr. Pederson's and Dr. Iskander's opinions. AR 26. The ALJ recognized Drs. Pederson and Iskander found Plaintiff "would be able to complete 3- to 4-step tasks on a sustained basis." *Id.* The ALJ found Dr. Pederson's and Dr. Iskander's opinions "well supported with explanation[] and . . . consistent with the longitudinal record." *Id.* The ALJ reasoned that although Plaintiff "has endorsed cognitive issues to his providers," he remains able to perform activities of daily living, and providers largely observed normal findings on objective examination. AR 27. The ALJ concluded that limiting Plaintiff "to simple routine tasks" would "accommodate the effects of pain and his medications." *Id.*

Plaintiff argues that the ALJ should have included Drs. Pederson and Iskander's limitation to "3- to 4-step tasks." The Commissioner responds that their opinions do not support that they limited Plaintiff to only "3- to 4-step tasks." The Commissioner argues that they recognized Plaintiff could perform multi-step tasks and concluded at a minimum, he could "complete 3- to 4-step tasks." I disagree with this reading of their opinions,

5

especially given their familiarity with the Social Security regulations and the definition of RFC as the *most* a claimant can do (not the minimum).

The Commissioner mainly argues that the ALJ's RFC limitation to "simple routine tasks" was more limited than the state agency consultants' limitation to "3- to 4-step tasks." The Commissioner argues that the ALJ's assessment of "simple routine tasks relate to one- and two-step tasks." Doc. 12. The Commissioner does not elaborate further on this argument and cites no caselaw in support.

Neither the VE hypothetical nor the written RFC in the opinion limited Plaintiff to performing a certain number of tasks; instead, the ALJ stated Plaintiff could perform "simple routine tasks." The *DOT* describes jobs by both specific vocational preparation (SVP) level and reasoning development level. SVP means the amount of time for a "worker to learn the techniques, acquire the information, and develop the facility needed" to perform the job, which can include education or on-the-job training.[14] Jobs with an SVP level of 1 require a "short demonstration only" and jobs with an SVP level of 2 require up to a month to learn.[15] SVP level 1 and 2 jobs constitute "unskilled work,"[16] which is often described as work involving "simple, routine tasks."[17]

The reasoning development level, on the other hand, is part of the "general educational development" required for a job (along with math and language skills), usually "obtained in elementary school, high school, or college."[18] Reasoning development level 1 jobs involve "simple one- or two-step instructions" and "deal[ing] with standardized situations with occasional or no variables," while reasoning

---

[14] *DOT*, **App. C**.

[15] *Id.*

[16] *Fines v. Apfel*, 149 F.3d 893, 895 (8th Cir. 1998); *see also* **20 C.F.R. § 404.1568(a)**.

[17] *Samantha C. v. Kijakazi*, No. 21-CV-4008, 2022 WL 4636161, at *5 n.24 (N.D. Iowa Sept. 30, 2022) (collecting cases).

[18] *DOT*, **App. C**.

6

development level 2 jobs require "carry[ing] out detailed but uninvolved written or oral instructions" and "deal[ing] with problems involving a few concrete variables in or from standardized situations."[19] The Eighth Circuit has held that both reasoning level 1 and 2 jobs may involve simple instructions (noting "uninvolved" is consistent with "simple"); the main difference is in the *number* of those instructions.[20] As another circuit expounded:

> "[D]etail and length are highly correlated. Generally, the longer the instructions, the more detail they can include. . . . [D]etailed instructions are . . . less correlated with complexity than with length. Instructions often include many steps, each of which is straightforward. Driving directions are a good example: they may prescribe many turns, but the turns are generally easy to make, and the route rarely changes, making the directions simple, routine, and repetitive.[21]

Thus, by limiting Plaintiff to "simple routine tasks," the ALJ did not limit Plaintiff to one- to two-step tasks (as the Commissioner argues). Indeed, the ALJ found Plaintiff could perform jobs with a reasoning level of 2,[22] which necessarily requires more than one- to two-step instructions (which is reasoning level 1 work).[23]

Some courts have reasoned that because reasoning level 1 work involves only one- to two-step instructions, work involving three- to four-step instructions must be reasoning

---

[19] ***Id.***

[20] *See* **Moore v. Astrue**, 623 F.3d 599, 604 (8th Cir. 2010) (holding that "uninvolved" instructions required for reasoning level two work means "not complicated or intricate," despite being "potentially detailed," and therefore reasoning level two work did not conflict with claimant's RFC limitation to handling "simple job instructions" and "simple, routine, and repetitive work activity"); **Stanton v. Comm'r, Soc. Sec. Admin.**, 899 F.3d 555, 558-59 (8th Cir. 2018) (holding that claimant's RFC of understanding, retaining, and carrying out "simple one- to two-step instructions" limited him to reasoning level one jobs unless VE testimony resolved the conflict with the DOT).

[21] **Lawrence v. Saul**, 941 F.3d 140, 143 (4th Cir. 2019) (relying on *Moore*).

[22] AR 29; **DOT §§ 209.587-034, 239.567-010, 355.677-014**.

[23] *See* **Stanton**, 899 F.3d at 559.

7

level 2 work.[24] I do not disagree. Where the logic falls apart is these courts then extrapolating that all reasoning level 2 work must be limited to only three- to four-step instructions,[25] instead of recognizing that work involving three- to four-step instructions might be a smaller subset of reasoning level 2 work.[26] All apples are fruits; that does not mean all fruits are apples.[27]

---

[24] *See Kaitlyn B. v. Comm'r of Soc. Sec.*, No. C20-5963, 2021 WL 2432324, at *5 (W.D. Wash. June 15, 2021).

[25] *Id.* at *4-5 (holding that ALJ "reasonably translated" the state agency opinions when they limited claimant to "1-3 step tasks" and ALJ's RFC limited claimant to "simple routine tasks"); *see also Maureen P. v. Kijakazi*, No. 20-cv-03240, 2022 WL 1843988, at *10 (E.D. Wash. Feb. 23, 2022) (holding that the ALJ accounted for medical opinions' limitation "to one to three-step tasks" by limiting RFC to "simple, routine tasks of no more than reasoning level two"); *Barca v. Comm'r of Soc. Sec.*, No. 16-cv-187, 2017 WL 3396416, at *5 (D. Vt. Aug. 8, 2017) ("[T]he ALJ adequately accounted for [three-step-task] limitation by restricting [claimant] to performing only 'simple, unskilled work.'"); *Pimentel v. Comm'r of Soc. Sec. Admin.*, No. 14CV112, 2014 WL 7370079, at *13 n.15 (N.D. Ohio Dec. 29, 2014) (rejecting in footnote argument that "a limitation to simple, routine and repetitive tasks does not account for a restriction to one-to-four step tasks and no multi-tasking"); *Morris v. Astrue*, No. CV 11-10311, 2012 WL 3150609, at *2 (C.D. Cal. July 31, 2012) (holding that ALJ's RFC limitation "of performing simple, routine, repetitive tasks" was "consistent with, and encompasses," the medical opinion limiting claimant "to three-step tasks").

[26] I find more persuasive courts that have reasoned:

> The Commissioner contends a person who can perform two-step tasks can perform reasoning level one jobs and, therefore, a person who can perform three-step tasks must be able to "perform jobs at the next higher reasoning level (level two)." Such a person may be able to perform *some* reasoning level two jobs. However, there is no evidence that every reasoning level two job requires no more than three-step tasks. And there is no evidence in the record that the jobs the ALJ relied on required only three-step tasks.

*Diane Kay W. v. Saul*, No. C20-5641, 2020 WL 7241428, at *2 (W.D. Wash. Dec. 9, 2020) (citations omitted).

[27] I note that in *Loeckle v. Saul*, the plaintiff argued that the state agency consultants' opinion that plaintiff would at times have "difficulties following detailed instructions" and could "follow 3-4 step commands" supported a limitation to reasoning level 1 work. No. 19-CV-3031, 2020 WL 6821077, at *9-10 (N.D. Iowa Aug. 11, 2020), *report and recommendation adopted in relevant part*, 2020 WL 5518620 (Sept. 14, 2020), *vacated on other grounds*, No. 20-3373, 2021 WL 5365233 (8th Cir. June 4, 2021). I rejected this argument, but I did find the opinions

8

I find more persuasive those courts that have held a limitation to simple, routine work does not encompass a limitation to three- to four- step tasks.[28]

> The adjectives "simple, routine, and repetitive[]" . . . concern the complexity of tasks that [c]laimant can perform. By contrast, a restriction to "one to three step work like activities," relates to the number of steps.[29]

As the example about driving instructions above illustrates, "simple . . . directions may require many steps."[30] Accordingly, I recommend holding that the ALJ erred by assigning persuasive weight to the state agency consultants' opinions, but failing to

---

supported a limitation to reasoning level 2 work. *Id.* at *11. Because the ALJ had found claimant could perform a reasoning level 2 job, I reasoned any error was harmless. *Id.* at *12. The parties' arguments in *Loeckle* were focused on the ALJ's failure to include a reasoning-level limitation, and the court did not have the opportunity to fully analyze and address the overlap between three-to-four-step work and reasoning-level-two work.

[28] *See Amanda R. v. O'Malley*, No. 23-cv-00781, 2024 WL 4761444, at *5, *7-8 (S.D.W. Va. Oct. 22, 2024) (holding that ALJ's RFC to "simple, routine, repetitive tasks" did not encompass state agency consultants' limitation to "repetitive one and three-step work like activities" and that ALJ therefore erred by indicating he found clamant more limited than state agency consultants without explaining failure to adopt three-step limitation), *report and recommendation adopted*, 2024 WL 4757814 (Nov. 12, 2024) (clear error review); *Casandra P. L. v. Comm'r of Soc. Sec.*, No. 20-CV-5957, 2021 WL 12176440, at *6-7 (W.D. Wash. June 14, 2021) (holding that ALJ erred by finding medical opinions persuasive but failing to explain how ALJ's RFC limitation to "'simple, routine tasks' . . . encompasses the doctors' opinion regarding [p]laintiff's ability to follow one- to three-step instructions"); *Mindi W. v. Comm'r of Soc. Sec.*, No. 20-cv-05675, 2021 WL 12177952, at *4 (W.D. Wash. Sept. 16, 2021) ("There is a meaningful distinction between a restriction to understanding and carrying out simple instructions—as opposed to a restriction to understanding and remembering simple, one-to-three-step instructions."); *Diane Kay W.*, 2020 WL 7241428, at *2 (holding that ALJ's RFC "limit[ing] plaintiff to 'simple, routine tasks not exceeding [an SVP] level of 2'" did not encompass limitation to three-step tasks found in persuasive medical opinions (cleaned up)); *Ragsdale v. Saul*, No. 18-CV-946, 2019 WL 2991945, at *3 (E.D. Wis. July 8, 2019) (rejecting argument that limitation to "unskilled work" encompassed limitation to "one, two or three step instructions" when the latter limitation was included in the written RFC but not the hypothetical to the VE).

[29] *Amanda R.*, 2024 WL 4761444, at *8 (cleaned up).

[30] *Id.*

adopt—or explain the failure to adopt—those opinions' limitation to three- to four-step tasks.

### B. The DOT Marker Position

At step five, the burden shifts to the Commissioner "to establish that [claimant] maintains the [RFC] to perform a significant number of jobs within the national economy."[31] "The [ALJ] may rely on a vocational expert's" testimony "to show that jobs that a person with the claimant's RFC can perform exist in significant numbers."[32]

Here, the ALJ relied on testimony from vocational expert (VE) Jeff Johnson, who testified that Plaintiff could work as a marker, office helper, or transporter, and provided the number of those positions available nationally. AR 56. Plaintiff's attorney had the opportunity to question the VE during the hearing and did not challenge this testimony nor ask the VE what data he relied upon. AR 56-57. VE Johnson's resume shows that he has a Master's degree in personnel and counseling; that he has worked in vocational services or adjacent areas (e.g., sales of vocational services) his entire career beginning in 1977; and that he has served as a vocational expert for the Social Security Administration for more than thirty years. AR 297-98.

Plaintiff argues that the *DOT* description of the marker position shows it is obsolete. The *DOT* has not been updated since 1991.[33] Nevertheless, the Social Security Administration continues to recognize the *DOT* as a reliable source of job data[34] and to require VEs to testify consistently with the *DOT*.[35] The *DOT* describes the marker

---

[31] *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

[32] *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005).

[33] *Medved v. Kijakazi*, 855 F. App'x 311, 311 (8th Cir. 2021) (per curiam) (citing *Purdy v. Berryhill*, 887 F.3d 7, 14 n.10 (1st Cir. 2018)).

[34] *Id.*

[35] *Moore v. Colvin*, 769 F.3d 987, 989 -90 (8th Cir. 2014).

position as follows:

> Marks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies. May print information on tickets, using ticket-printing machine . . . .[36]

Plaintiff relies on district court cases reasoning that "[g]iven the prevalence of bar codes, PLU (price look-up codes) and the like, it seems unlikely that significant numbers of price markers continue to wield pricing guns, or do similar work, in the nation's retail outfits" today.[37] But as the Commissioner notes, in most of Plaintiff's cited cases (from out-of-circuit district courts), the court did not remand on this basis.[38] The one case cited by Plaintiff in which the court did remand based on finding the marker position obsolete did not address the Supreme Court's recent decision in *Biestek*.[39]

In *Biestek*, the Supreme Court rejected the Seventh Circuit's categorical rule that VE testimony did not constitute substantial evidence "if the expert had declined [the

---

[36] *DOT* § **209.587-034**.

[37] *See, e.g.*, *Henderson v. O'Malley*, No. 21-CV-3304, 2024 WL 127843, at *5 (E.D.N.Y. Jan. 11, 2024).

[38] *Id.* at *6 (noting issue with marker position but declining to address sua sponte because it was not raised); *Daniel L. v. Kijakazi*, No. 22 C 6976, 2023 WL 5830807, at *9, *11 (N.D. Ill. Sept. 8, 2023) (because the court was remanding for other reasons, "point[ing] out" issue with marker position); *Applefeld v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-17-517, 2018 WL 1136571, at *5 n.1 (D. Md. Mar. 1, 2018) (that marker job was obsolete was "not a basis for remand").

[39] *Hawthorne v. Comm'r of Soc. Sec.*, No. 20-CV-02247, 2021 WL 4356009, at *2 (E.D.N.Y. Sept. 24, 2021) (holding that VE testimony "simply stating that jobs exist is not substantial evidence, especially when the jobs are 'plainly obsolete,'" relying on a Seventh Circuit case from 2014).

claimant's] request to provide supporting data."[40]  The Court reasoned:

> Assuming no demand, a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data.  Take an example.  Suppose an expert has top-of-the-line credentials, including professional qualifications and many years' experience; suppose, too, she has a history of giving sound testimony about job availability in similar cases (perhaps before the same ALJ).  Now say that she testifies about the approximate number of various sedentary jobs an applicant for benefits could perform.  She explains that she arrived at her figures by surveying a range of representative employers; amassing specific information about their labor needs and employment of people with disabilities; and extrapolating those findings to the national economy by means of a well-accepted methodology.  She answers cogently and thoroughly all questions put to her by the ALJ and the applicant's lawyer.  And nothing in the rest of the record conflicts with anything she says.  But she never produces her [underlying] data.  Still, her testimony would be the kind of evidence—far "more than a mere scintilla"—that "a reasonable mind might accept as adequate to support" a finding about job availability. . . .  But if that is true, why should one additional fact—a refusal to a request for [underlying] data—make a vocational expert's testimony categorically inadequate? . . . [I]f our expert's opinion was sufficient—*i.e.*, qualified as substantial evidence—before the refusal, it is hard to see why the opinion has to be insufficient afterward.[41]

The Court noted that a "less qualified" VE "might offer testimony that is so feeble, or contradicted, that it would fail to clear the substantial-evidence bar."[42]  Thus, whether a VE's testimony constitutes substantial evidence must be determined on a "case-by-case" basis.[43]

Here, the VE had more than thirty years of vocational experience.  As the Eleventh Circuit has noted, the DOT does "not provide statistical information about the number of

---

[40] ***Biestek v. Berryhill***, 587 U.S. 97, 102 (2019).

[41] ***Id.*** at 105 (quoting ***Consolidated Edison Co. v. NLRB***, 30 U.S. 197, 229 (1938)).

[42] ***Id.***

[43] ***Id.*** at 108.

jobs available in the national economy."⁴⁴  Thus, VEs must rely on other (presumably more recently updated) sources to testify about the number of jobs available in the national economy.⁴⁵  Plaintiff did not ask the VE about the data underlying his opinion.  The ALJ had no reason to discredit the VE's testimony and "was under no duty 'to conduct an independent investigation' into the vocational expert's testimony."⁴⁶

I do not find that the description of the marker position necessarily shows that it is obsolete.

> The Dictionary of Occupational Title definitions "are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range."  "Not all of the jobs in every category have requirements identical to or as rigorous as those listed in the

---

⁴⁴ *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1281 (11th Cir. 2020).

⁴⁵ For example, the Department of Labor publishes updated labor statistics in a database called the Occupational Information Network (O*NET). *Cunningham v. Astrue*, 360 F. App'x 606, 616 (6th Cir. 2010).  The O*NET groups jobs differently than the DOT but provides the DOT codes that correspond to each O*NET job.  *Goode*, 966 F.3d at 1281.  "A single [O*NET] group may contain multiple DOT occupations," so the VE must use other evidence to apportion the number of jobs attributable to a single DOT occupation.  *Id.*  The O*NET groups the DOT "marker" position along with 37 other DOT codes as a "stocker and order filler," of which 2,764,800 positions exist nationwide.  *Stockers and Order Fillers Crosswalk*, O*NET OnLine, https://www.onetonline.org/link/result/53-7065.00?c=cw&n_cw=0&s_cw=DOT (site updated Aug. 26, 2025) [https://perma.cc/QD2P-RWVF]; *Stockers and Order Fillers Details*, O*NET OnLine, https://www.onetonline.org/link/details/53-7065.00 (site updated Aug. 26, 2025) [https://perma.cc/P6WM-L2UQ].

⁴⁶ *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 318 (6th Cir. 2020) (rejecting claimant's argument that surveillance-system monitor job was obsolete because claimant "did not cross-examine the [VE] when he had the opportunity," and VE's "testimony constitutes substantial evidence to support the ALJ's finding"); *Gallo v. Comm'r of Soc. Sec. Admin.*, 449 F. App'x 648, 650 (9th Cir. 2011) ("Although the description in the [*DOT*] of the 'Addresser' job contains a seemingly antiquated reference to typewriters, the ALJ was nonetheless entitled to rely on the VE's testimony that the Addresser job exists in significant numbers in the national economy."); *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) ("We decline [claimant's] invitation to take judicial notice of the decline of the photofinishing industry and deem the position infeasible for her.  A vocational expert testified to the existence of such jobs at the national and regional level. The ALJ was entitled to credit that testimony . . . .").

13

Dictionary of Occupational Titles."[47]

As the Commissioner notes, there are still instances in which price tags need to be attached to merchandise beyond bar codes—for example, in retail clothing stores. The Commissioner also argues the DOT description of marker includes wholesale positions. Thus, just because there is no longer a need for an employee to glue price tags to merchandise does not mean that all marker positions are obsolete. In addition, as the Commissioner notes, the Social Security Administration has recognized certain DOT jobs as obsolete[48] or only existing in certain regions,[49] and the marker position is not one of them. Other district courts have rejected the argument that the ALJ errs as a matter of law by relying on the marker position at step five.[50]

The ALJ could rely on the VE's experience and credit the VE's testimony about the number of marker positions that exist nationwide, especially when the claimant did not question the VE at the hearing about the underlying data supporting his opinion. I recommend finding that substantial evidence supports the ALJ's determination that a significant number of marker positions exist in the national economy.

---

[47] ***Hillier v. Soc. Sec. Admin.***, 486 F.3d 359, 366-67 (8th Cir. 2007) (cleaned up) (quoting ***Wheeler v. Apfel***, 224 F.3d 891, 897 (8th Cir. 2000)).

[48] ***EM-24027 REV***, Social Security Administration (Jan. 6, 2025), https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM [https://perma.cc/72FJ-FAJN].

[49] ***EM-24026***, Social Security Administration (June 22, 2024), https://secure.ssa.gov/apps10/reference.nsf/links/06212024021759PM [https://perma.cc/M2ZG-YZWY].

[50] *See, e.g.*, ***Roper v. Dudek***, No. 25-CV-0226, 2025 WL 3036536, at *2 (M.D. Fla. Oct. 1, 2025), *report and recommendation adopted*, 2025 WL 3034788 (Oct. 30, 2025) (clear error review); ***Dean W. T. v. Bisignano***, No. 24-cv-04113, 2025 WL 2793303, at *9-10 (C.D. Ill. Sept. 15, 2025), *report and recommendation adopted*, 2025 WL 2783550 (Sept. 30, 2025) (clear error review); ***Weeder v. Dudek***, No. 24-CV-546, 2025 WL 848456, at *11 (M.D. Pa. Mar. 18, 2025).

14

### III. CONCLUSION

I recommend **reversing** the Commissioner's decision and entering judgment in favor of the Plaintiff.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[51] Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[52]

**DATED** January 9, 2026.

*(signature)*
Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[51] **Fed. R. Civ. P. 72**.

[52] *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).